# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY A. JASCH, | CASE NO.  1:06-cv-0480 TAG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR DEFENDANT AND AGAINST PLAINTIFF |
| Defendant. | |

Plaintiff Kimberly A. Jasch ("Claimant") seeks judicial review of an administrative decision denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on April 21, 2006 (Doc. 1), and her opening brief on November 21, 2006. (Doc. 14). The Commissioner filed his opposition on December 19, 2006 (Doc. 15). Claimant's reply brief was filed on December 21, 2006. (Doc. 16).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge. (Docs. 8, 12). By an order dated December 22, 2006, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 17).

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

## JURISDICTION

On January 15, 2004, Claimant protectively filed an application for DIB. (Administrative Record ("AR") 57-58). On April 22, 2004, Claimant filed an application for DIB and for SSI. (AR 59-61, 168-71). Claimant's concurrent applications were denied initially and on reconsideration. (AR 36-37, 47-52, 172-73). After timely requesting a hearing, Claimant and her "disability advocate and representative" appeared before Administrative Law Judge ("ALJ") Robert A. Evans on October 13, 2005. (AR 53, 104, 174-192). On October 27, 2005, the ALJ issued a written decision finding that Claimant was not disabled for purposes of DIB or SSI. (AR 13-22). The Appeals Council denied Claimant's request for review on February 4, 2006. (AR 5-7). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On April 21, 2006, Claimant timely filed this action. (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of both Claimant and the Commissioner, and only will be summarized here.

At the administrative hearing, Claimant testified that her date of birth was December 16, 1971, making her 34 years old both at the hearing and when the ALJ issued his decision. (AR 179, 13-22). Claimant added that she had a high school equivalency (GED). (AR 179). She testified that she had worked as a manager in the fast food business from 1990 through July 1999, when she had to stop working. (AR 179-181). Claimant reported that her sole means of income was government support until she remarried in April 2004. (AR 179-180).

Claimant was sitting in a wheelchair that enabled her to elevate her legs, which, she explained, her orthopedist, Dr. Dixon, had prescribed in July 2005, although he had been treating her since 1993. (AR 181-183). She testified that she generally used braces when she was home so that she could get up and do things if necessary. (AR 182). Claimant added that the braces did not help stabilize her knees or keep them from giving out. (Id.). Moreover, the braces were heavy and pinched her legs. (AR 183). According to Claimant, her feet and, to a lesser extent, her legs became swollen when she sat for

15 or 20 minutes without elevating them, which explained the lifts on her wheelchair. (Id.). Between three and four times daily she would lay down with pillows under her knees to alleviate the swelling, take pain medication, and rest for up to three hours. (Id.). Claimant explained that she could not simply sit on a chair with her feet on a stool because her knees would hyperextend backwards. (AR 184).

Claimant testified that she currently saw Dr. Lamier, an orthopedic doctor, who had her undergo various diagnostic tests and scheduled nerve conduction studies in approximately two weeks. (AR 184-185). She takes ibuprofen, neurontin, and cynament for her uncontrollable twitching and muscle spasms, which help but do not eradicate her symptoms. (AR 185-186). Claimant testified that the medications make her very tired and weak. (AR 186).

With respect to her limitations and activities, Claimant testified that she has to lay down for at least an hour to alleviate the pain she suffers after standing for ten minutes. (AR 186). In addition, she is incapable of lifting things, bending over or picking things up; stopping, crouching, crawling, kneeling – basically, she contends, she cannot do anything from her waist down. (Id.). Claimant disputed Dr. Dixon's assessment that she could sit for six hours with normal breaks if she were allowed to change positions. (AR 187-188). Finally, she reported that she was 5'1" and weight 220 pounds. (AR 188).

The ALJ next elicited testimony from Ruth Arnush, a vocational expert ("VE"). (AR 188-191). After the VE identified Claimant's prior work experience – fast food manager, Dictionary of Occupational Titles ("DOT") number 187.167-106, light level of exertion, and skilled – the ALJ posed three hypotheticals. (AR 189-191). In all of the questions, the individual had a high school equivalency and GED, was 34 years old, and had the above-referenced work history. (AR 189). In hypothetical one, the individual could lift/carry 15 pounds frequently and 25 pounds occasionally, could stand or walk for four hours out of an eight hour day but had no sitting limitations, and could kneel and climb only occasionally. The VE testified that the hypothetical person could not be a fast food manager because that job requires "almost constant standing and walking." (Id.). According to the VE, there were other jobs that this hypothetical person could perform, such as assembling plastic toys, for which she gave the assigned DOT number and the available regional jobs – 1,621 – and national jobs, which exceeded 65,000. (Id.).

///

In hypothetical number two, the ALJ presented the same basic person but with the following limitations: stand or walk only two hours, incapable of climbing ladders or ropes, required to avoid walking or working on uneven terrain, no forceful pushing or pulling, and unable to use foot controls. (AR 189-190). VE Arnush testified that this person still could assemble plastic toys, but the number available would decrease by approximately 25% both locally and nationally.[2] (AR 190).

The third hypothetical involved an individual who could stand or walk for less than two hours, lift 20 pounds occasionally, could never climb, balance, stoop, kneel, crouch, crawl, reach, finger, handle, or feel, and had to move from sitting to standing or visa-versa every 30 to 60 minutes. (Id.). The VE testified that this individual could not perform the plastic toy assembly job, or any other light or sedentary job. (AR 190-191).

**RELEVANT LEGAL FRAMEWORK**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(citations omitted); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of

---

[2] There would be approximately 1,200 jobs locally and 49,000 jobs in the national economy.

fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989)(quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f); 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish that he "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)(citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

As a preliminary matter, ALJ Evans noted that Claimant was insured for benefits until Title II through December 31, 2004, and, accordingly, she had to demonstrate that she became disabled on or before that date. (AR 16). The ALJ also reported that Claimant's alleged onset date was July 21, 1999. (AR 17). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date. (AR 17, 21). At step two, the ALJ determined that Claimant had chronic knee pain, which was a severe impairment. (Id.). At step three, ALJ Evans found that Claimant's

impairment did "not meet or equal the severity of Section 1.02 of the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4," or any other listed impairment. (AR 17, 21). The ALJ then discussed in detail Claimant's medical records and her testimony, which he found not entirely credible. (AR 17-19, 21). After factoring in her obesity, symptoms, and pain, to the extent they were consistent with the objective evidence, the ALJ determined that Claimant retained the residual functional capacity ("RFC") to engage in a limited range of light work and sedentary work. (AR 19-20). Specifically, ALJ Evans found that Claimant retained the RFC to lift and carry twenty-five pounds occasionally and fifteen pounds frequently; stand and/or walk for four hours in an eight-hour day without using assistive devices; occasionally kneel and climb; and sit without limitations. (AR 20-21). At step four, the ALJ determined that Claimant could not perform her past relevant work. (AR 19, 21). Using Medical-Vocational Rule 202.21 as a framework, based on the testimony of the VE, and in light of Claimant's age, education, and RFC, the ALJ concluded that there were jobs available in the national economy that Claimant could perform and, therefore, Claimant was not disabled or eligible for DIB or SSI payments. (AR 20-22).

**ISSUES**

Claimant contends that the Commissioner erred both because he ignored the substantial evidence and he misapplied the law. Specifically, Claimant argues that:

1. The ALJ erred in finding that Claimant's impairment did not meet Listing 1.02;
2. The ALJ improperly rejected the opinion of Claimant's treating physician; and
3. The ALJ erroneously discounted Claimant's subjective testimony as not entirely credible.

As discussed above, this Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**1.     Claimant's impairment met Listing 1.02.**

Claimant asserts that, had the ALJ properly evaluated all of the medical records, he would have concluded that there was substantial evidence to support that Claimant met, at a minimum, Listing 1.02A. (Doc. 14, pp. 7-9). She further contends that the ALJ should have found that Claimant's obesity

7

was a severe impairment that, if appropriately assessed under Listing 1.00Q,[3] would have resulted in a finding that she satisfied the criteria for Listing 1.02A. (Id. at 9). The Commissioner responds that Claimant failed to satisfy the criteria of Listing 1.02A. (Doc. 15, p. 6-8). Claimant disputes the Commissioner's contentions in her reply brief. (Doc. 16, pp. 3-5).

In general, it is Claimant's duty to prove that she is disabled. See 42 U.S.C. § 423(d)(5)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence. . . . You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled.

20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c). Moreover, with respect to establishing disability at step three, Claimant bears the burden of proving that her ailment meets or equals one of the Listings. Benten ex rel. Benton v. Barnhart, 331 F.3d 1030,1034 (9th Cir. 2003); Erickson v. Shalala, 9 F.3d 813, 816 (9th Cir. 1993).

A.   Obesity.

In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. Social Security Ruling ("SSR")

///

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 1.00Q states:

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

96-4p. If the ALJ finds that an alleged ailment does not constitute a severe impairment at step two, the ailment would not meet the criteria of the listings.

With respect to Claimant's obesity, the ALJ acknowledged that the medical records indicated that Claimant was overweight, but none of the physicians identified problems or limitations. (AR 18, 132-36, 149-154, 157-165). The ALJ further discussed Claimant's testimony, which excluded any reference to her obesity. (Id. at 18-19). Accordingly, Claimant did not satisfy her burden, and the ALJ did not err in failing to find, that obesity constituted a severe impairment that required that he apply Listing 1.00Q when determining whether Claimant met or equaled Listing 1.02.[4] Benten, 331 F.3d at 1034.

   B.   Evaluation of Medical Evidence and Listing 1.02.

Section 1.00 of the Listings defines the criteria for musculoskeletal system. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00. To have a musculoskeletal impairment that meets or equals Listing 1.02, an individual must have a:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P. App.1, § 1.02. Subsection A of § 1.02 requires that one or more of the peripheral, weight-bearing joints, such as a hip, ankle, or knee, is affected to the extent that the individual cannot ambulate effectively, as defined in Listing 1.00B2b. See id. at § 1.02(A). Listing 1.00B2b addresses the loss of function with respect to the incapacity to ambulate effectively as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P. App.1, § 1.00B2b.

In his decision, the ALJ addressed the objective evidence and Claimant's testimony based upon which he found that Claimant did not meet Listing 1.02. (AR 17). The ALJ noted that the July 2005

---

[4] Contrary to Claimant's contention that the ALJ also failed to consider Claimant's obesity when evaluating her ability to work, (Doc. 14, p. 9), the ALJ specifically considered, inter alia, Claimant's obesity, pursuant to SSR 02-01p, when he determined her residual functional capacity and her ability to work. (AR 19).

MRIs of Claimant's knees and her related pain did not satisfy the requirements of Listing 1.02, instead revealed that she has "only mild degenerative changes, early degenerative joint disease, mild chondromalacia and mild bursitis [but] no joint space narrowing, bony destruction or ankylosis of her knee joints and is able to ambulate without a wheelchair or assistive devices." (AR 17, 164-165). He also discussed the results of Claimant's July 2002 x-rays, which revealed hyperextension, but did not show any joint abnormality or disease. (AR 17, 120). In addition, the ALJ addressed the evidence – both from medical records and Claimant's testimony – demonstrating that she was able to ambulate without assistive devices as defined in Listing 1.00B2b, and had requested a wheelchair to use during her vacation to Disneyland, but generally used knee braces. (AR 17, 157, 181-183).

The only evidence that would tend to support a finding that Claimant met the criteria for Listing 1.02 consists of subjective statements she made to family practitioner D. James Dixon, M.D., and during her physical therapy evaluation in April 2002. (AR 121-122, 149-154, 157-165). Although a DDS consultant initially concluded that Claimant had severe limitations, he later amended his report and determined that she did not have an impairment that satisfied a Listing and was able to perform, at a minimum, sedentary-level work. (AR 138-143, 146-147).

To the extent that Claimant asserts that there is substantial evidence that supports a finding that she satisfies the criteria of Listing 1.02, the medical records indicate, at best, conflicting evidence. (See generally AR 118-167). It is the ALJ's responsibility to resolve conflicts in the evidence. Richardson v. Perales, 402 U.S. 389, 400 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Based on the criteria to meet Listing 1.02, and the record evidence, the undersigned finds that Claimant's argument is without merit.

**2.      Rejection of treating physician's opinion.**

Claimant contends that the ALJ erred in rejecting the opinions of her treating physician, Dr. Dixon, without providing specific and legitimate reasons. (Doc. 14, pp. 9-10). She further asserts that Dr. Dixon's opinions should be accorded "great weight." (Id. at 10). The Commissioner responded that the ALJ provided specific and legitimate reasons, supported by objective medical evidence, for discounting Dr. Dixon's opinions. (Doc. 15, pp. 9-10). In reply, Claimant argues that Dr. Dixon's opinion is

///

supported by medical evidence, specifically his clinical findings based on his examinations of Claimant. (Doc. 16, p. 6).

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct. Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.1988).

In Orn v. Astrue, ___ F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence. Orn, 2007 WL 2034287, *5 (citation and quotation omitted). "By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." Id. (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In that event, the ALJ is instructed to consider the factors listed in § 404.1527(d)(2)-(6) and/or § 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency

11

of examination" by the treating physician; the "nature and extent of the treatment relationship" between the patient and the treating physician; and the degree to which the treating physician "presents relevant evidence to support an opinion, particularly medical signs and laboratory findings." 20 C.F.R. §§ 404.1527(d)(2)(i)-(iii), 416.927(d)(2)(i)-(iii). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; Orn at *6. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Id.

The medical records reveal that Dr. Dixon, a family practitioner with Drummond Medical Group, first treated Claimant on August 19, 2003, and remained her treating physician until at least July 25, 2005. (AR 149-154, 157, 160). During those years, Claimant saw Dr. Dixon six times, which included two visits for problems unrelated to her knees. (AR 150, 151). Dr. Dixon diagnosed Claimant's knee and related problems based on her reports and basic examinations; there is no indication that he ordered labs or diagnostic tests until July 2005, or that he obtained copies of old x-rays. (AR 149, 152-154, 157, 160). The July 25, 2005, x-ray of Claimant's left knee revealed no evidence of a fracture or other bony abnormality, no arthritic changes, and no evidence of joint effusion, but was considered a "normal study." (AR 159). According to Dr. Dixon, Claimant had seen an orthopedist in July 2004, but it appears that he was referring to a consultative examination by Dr. Rajeswari Kumar. (AR 132-137, 149).

Overall, Dr. Dixon's progress reports and diagnoses, as summarized by the ALJ and reported in the doctor's opinions, are contradicted by Dr. Kumar's assessment and inconsistent with the x-rays and MRIs of Claimant's knees. Dr. Kumar performed a consultative orthopedic examination in July 2004. (AR 132-137). He reviewed Claimant's medical records and relied, in part, on an x-ray of Claimant's left knee, which revealed that she had a normal patellofemoral joint, normal knee joint space, and no bony or soft tissue pathology. (AR 135). On examination, Dr. Kumar noted that Claimant had knee pain that prevented her from walking on her heels or toes, but stated that she was able to ambulate, albeit with a guarded gait, without the use of an assistive device, and the x-rays indicated no pathology in her knees. (AR 133-135). He further reported that, although she had severe hyperextension of the knee, medial lateral instability, and diffuse tenderness, Claimant had full range of motion and all diagnostic tests were

negative. (AR 134). According to Dr. Kumar, Claimant could stand and walk for four hours; lift and/or carry 25 pounds occasionally and 15 pounds frequently; kneel and climb occasionally; and bend, stoop, sit, and engage in upper extremity activities without limitation. (AR 136).

In addition to the July 25, 2005, x-ray referenced above, (AR 159), on July 28, 2005, Claimant had an MRI of each knee. (AR 164-165). According to the analysis of the left knee MRI, Claimant suffered mild degenerative changes of the menisci, bursitis, tenosynovitis, early degenerative joint disease at the medial joint compartment, and mild chondromalacia patellar. (AR164). The MRI of Claimant's right knee showed evidence of mild degenerative change of menisci; minimal degenerative disease at medial joint compartment, slight lateral patellar tilt/subluxation; and mild deep infrapateller bursitis. (AR 165). These tests were not addressed in the administrative record by any doctor. (See generally AR 118-165).

The ALJ summarized two opinions completed in 2004 by Dr. Dixon. (AR 17). On April 29, 2004, Dr. Dixon completed a Medical Report to enable Claimant to receive public assistance. (AR 123-125). In the Medical Report, Dr. Dixon stated that Claimant had a chronic, permanent medically verifiable condition that precluded her from performing certain tasks; that she actively sought treatment; and that was incapable of working. (AR 123). With respect to Claimant's physical capacities, Dr. Dixon stated that she could stand, walk, and/or sit for 0-2 hours at a time; was restricted in the use of her feet due to knee pain and swollen feet; could not lift or carry 10 pounds or stoop, climb, reach, crouch, balance, kneel, or crawl. (AR 124-125). In addition, Dr. Dixon opined that Claimant's medication could affect her ability to work. (AR 125).

The second "opinion" consisted of an August 11, 2004, evaluation for musculoskeletal impairments and a medical source statement. (AR 161-163). In these documents, Dr. Dixon diagnosed Claimant as suffering from chronic knee pain due to knee instability, stated that he saw her only as needed, and reported that her range of motion was normal. (AR 161). In addition, she had been prescribed Neurontin and Vioxx. (Id.). Dr. Dixon then address Claimant's limitations, stating that her awkward gait restricted her to lifting and/or carrying 20 pounds occasionally and standing and/or walking less than two hours in an eight hour day. (AR 162). In addition, he reported that she had problems stooping and bending due to her knee instability. (Id.). Dr. Dixon acknowledged that Claimant did not need any assistive devices, but noted that she had to avoid heights and moving

machinery. (AR 162-63). His prognosis was that Claimant's condition was stable and permanent. (AR 163).

The ALJ discounted Dr. Dixon's opinions, according his evaluations no weight, after setting forth the objective record evidence and finding that it did not support Dr. Dixon's opinions, (AR 17-18). The ALJ set forth the substantial medical evidence, which consisted primarily of examining and DDS physicians' evaluations and clinical findings, but also addressed the lack of more aggressive treatment modalities, and Claimant's infrequent visits to Dr. Dixon. (AR 17-19); see 20C.F.R. §§ 404.1527 (d)(2), 416.927(d)(2); SSR 96-2p (it is for the adjudicator to decide whether the opinion is adequately supported by "medically acceptable clinical and laboratory diagnostic techniques."); Orn, 2007 WL 2034287, *5. Based on the foregoing, the ALJ explicitly and implicitly concluded that Dr. Dixon's opinions were entitled to no weight from a medical standpoint and in light of the factors set forth in the regulations. See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (opinions' lack of consistency with other medical records; lack of support by clinical findings; the cursory and infrequent treatment of Claimant; failure to order diagnostic tests, refer Claimant to a specialist, suggest alternative methods, such as physical therapy, pain management, surgery).

Because ALJ Evans outlined Claimant's medical history and provided adequate reasons, based on substantial evidence, for not accepting, or deferring to, Dr. Dixon's opinions, the undersigned finds that there was no error.

**3.   ALJ's rejection, in part, of Claimant's subjective testimony.**

In her final argument, Claimant contends that the ALJ found her testimony not entirely credible without providing clear and convincing reasons. (Doc. 14, p. 11). She further asserts that both the objective medical evidence and the reports of her treating and examining physicians reveal that she suffers impairments that would cause her the pain and limitations to which she testified. (Id. at 12). The Commissioner responds that the ALJ assessed the credibility of Claimant's testimony in accordance with the applicable laws, regulations, and Social Security Rulings, and found that there was clear and convincing evidence to discount her subjective statements. (Doc. 15, pp. 10-12). Claimant replies that the ALJ improperly relied on his lay medical opinions, rather than focusing on the record evidence and, accordingly, his credibility findings were erroneous. (Doc. 16, pp. 6-7).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. Pursuant to SSR 96-7p, however, the ALJ may not disregard the claimant's pain testimony only because there is a lack of medical records evidencing an impairment that causes pain. SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does not seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." Orn, 2007 WL 2034287, *11. This Court further notes that there are any number of clear and specific findings that the ALJ can make, many of which are identified in SSR 96-7p. Such findings include: (1) whether "the level or frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of statements made by the claimant to physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and [that] this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." Id. Each of these and other potential findings are fact-specific, precisely the province of the ALJ. Some

other ALJ findings, as identified in reported cases, are illustrative and demonstrate the many ways in which ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility, (6) an ALJ found that claimant had been uncooperative during consultative examinations, and illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.  For a brief synopsis of factors that can form a basis for ALJ credibility findings, see Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

ALJ Evans explained why he discounted Claimant's testimony. The ALJ found that "[d]espite the claimant's allegations of disability since 1999, she apparently receives very little medical care." (AR 19). The ALJ noted that Claimant was referred to physical therapy in 2002, "but there is no indication she participated." (Id.). The ALJ also found that Claimant's medical records indicate that she saw her treating physician twice a year at most, and there was no indication she received any medical treatment from the time she was referred to physical therapy in April 2002 to August 2003. (Id.). The ALJ further found that Claimant told her treating physician that his prescribed combination of analgesics, anti-inflammatory medication, and muscle relaxants, together with her knee braces, "gave her relief." (Id.). Finally, the ALJ found that although Claimant was referred to an orthopedist for evaluation, "no surgery has ever been recommended." (Id.). The ALJ determined that "claimant's allegations are credible only to the extent that she is limited as set forth above." (Id.)[5].

The ALJ's reasons for discounting Claimant's testimony were specific, clear, and convincing, to wit, the level and frequency of the medical care she received was inconsistent with the extensive pain and symptoms she claimed to suffer from, and her testimony was inconsistent with the medical evidence and her statements to her treating physician. The Court concludes that the ALJ set forth sufficient, adequate reasons for discounting Claimant's subjective testimony. See Ruiz, 24 F. Supp. 2d at 1049 (conservative treatment regimen); SSR 96-7p (the level or frequency of treatment is inconsistent with the level of complaints; inconsistent statements made by the claimant to physicians and to the Social Security Administration). The undersigned, therefore, finds no error in the ALJ's discounting, in part, the credibility of Claimant's testimony.

## CONCLUSION

For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was based on proper legal standards. Accordingly, this Court ORDERS:

---

[5] Although the ALJ did not mention this aspect of Claimant's testimony, Claimant testified that she was more limited than Dr. Dixon reported in his opinions, asserting, for example, that she could not stand for more than ten minutes or sit for six hours because of the swelling in her legs. (AR 186-188). Given that Claimant did not try to alleviate this swelling by notifying her treating physician of its severity, this testimony lends to a finding that Claimant was, at a minimum, exaggerating her symptoms, which discredits her credibility. Tonapetyan, 242 F.3d at 1148; Light, 119 F.3d at 792.

17

1. That Claimant's Social Security complaint is DENIED; and

2. That judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Kimberly A. Jasch.

IT IS SO ORDERED.

Dated:   **September 4, 2007**                                         **/s/ Theresa A. Goldner**
UNITED STATES MAGISTRATE JUDGE